UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANA FORD, as guardian of N.F., | CASE NO. C20-0463 JLR |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |
| v. | |
| THE BOEING COMPANY, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Plaintiff Dana Ford's—as guardian for minor child N.F.—

motion to remand this case to King County Superior Court.  (Mot. (Dkt. # 25).)

Defendant the Boeing Company ("Boeing") opposes the motion.  (Resp. (Dkt. # 28).)

The court has considered the motion, the parties' submissions in support of and in

//

//

//

1    opposition to the motion, and the applicable law.  Being fully advised,[1] the court

2    GRANTS Mr. Ford's motion to remand this case to King County Superior Court.

3                                    **II.    BACKGROUND**

4    **A.    Factual Background**

5            Mr. Ford began working at Boeing's aircraft manufacturing facility (the "Boeing

6    Facility") in 2013.  (KCSC FAC (Dkt. # 1-4) (sealed) ¶ 12.)  Mr. Ford alleges that his

7    daughter, N.F., born in 2014, "was exposed via inhalation and/or dermal contact to

8    chemical products and substances that were utilized in the performance of his duties" at

9    the Boeing Facility.  (*Id.* ¶¶ 8, 14.)  Mr. Ford further alleges that N.F. suffered birth

10   defects as a result of Mr. Ford's exposure to these chemicals.  (*Id.* ¶ 70.)  Mr. Ford further

11   alleges that Defendant Newco, Inc. ("Newco")[2] supplied Boeing with chemicals to which

12   Mr. Ford was exposed and which ultimately caused N.F.'s injuries.  (*Id.* ¶ 1.)  Based on

13   //

14

15           [1] Mr. Ford requests oral argument (*see* Mot. at 1), but Boeing does not (*see* Resp. at 1).
16   Oral argument is not necessary where the non-moving party suffers no prejudice.  *See Houston v.*
     *Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984); *Mahon v. Credit Bureau of Placer Cty. Inc*., 171
17   F.3d 1197, 1200 (9th Cir. 1999) (holding that no oral argument was warranted where "[b]oth
     parties provided the district court with complete memoranda of the law and evidence in support
18   of their respective positions," and "[t]he only prejudice [the defendants] contend they suffered
     was the district court's adverse ruling on the motion.").  "When a party has an adequate
19   opportunity to provide the trial court with evidence and a memorandum of law, there is no
     prejudice [in refusing to grant oral argument]."  *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir.
20   1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp*., 933 F.2d 724,
     729 (9th Cir. 1991)) (alterations in *Partridge*).  Here, the issues have been thoroughly briefed by
21   the parties, and oral argument would not be of assistance to the court.  *See* Local Rules W.D.
     Wash. LCR 7(b)(4).  Accordingly, the court DENIES Mr. Ford's request for oral argument.

22           [2] Newco does business as Cascade Columbia Distribution Company ("Cascade").  (*See*
     Dkt.)

1    these allegations, Mr. Ford brings claims for negligence and products liability on behalf

2    of N.F. against Boeing; and for negligence and breach of warranty against Newco.  (*See*

3    *id.* ¶¶ 27-106.)

4    **B.    Procedural Background**

5         This district is the third forum in the life of this case.  Mr. Ford initially sued

6    Boeing in Cook County Circuit Court in the Illinois state court system.  (*See* Ill. SAC

7    (Dkt. # 1-5) (sealed).)  The Cook County Circuit Court consolidated Mr. Ford's case with

8    three related cases (collectively, the "Illinois Case").  (*See* Ill. FNC Order (Dkt. # 1-6)

9    (sealed) at 1.)

10        Mr. Ford did not name Newco as a defendant in the Illinois Case.  (*See* Ill. SAC at

11   1.)  On July 1, 2019, after limited discovery on statute of limitations and *forum non*

12   *conveniens* ("FNC") issues, Boeing filed a motion to dismiss and transfer the Illinois

13   Case on FNC grounds.  (*See* Ill. FNC Order at 2-3.)  After considering the applicable

14   private and public interest factors, the Cook County Circuit Court concluded that the

15   factors "strongly favor the transfer of [the Illinois Case] to the Washington Superior

16   Court," granted Boeing's motion, dismissed the Illinois Case, and held:

17          Pursuant to Rule 187, if the plaintiffs re-file their cases in the Washington
            Superior Court within six months, Boeing shall: (a) accept service of process
18          from the relevant court in which each case is re-filed; and (b) waive any
            argument based on a statute of limitations defense.
19
     (*Id.* at 28-29.)
20
          Mr. Ford filed a complaint in King County Superior Court on February 24, 2020,
21
     naming both Boeing and Newco as defendants.  (*See* KCSC Compl. (Dkt. # 1-3) (sealed)
22

at 2.)  Mr. Ford's Washington complaint alleges that Newco is a Washington corporation

with its principal place of business in Seattle, Washington.  (*Id.* ¶ 4.)  Mr. Ford amended

his complaint on March 26, 2020.  (*See* KCSC FAC at 26.)  Boeing then removed to this

district on March 27, 2020.  (*See* Not. of Removal (Dkt. # 1) at 7.)  In its notice of

removal, Boeing contends that this court has diversity jurisdiction pursuant to 28 U.S.C.

§ 1332(a)(1) because Newco—the only non-diverse defendant—is fraudulently joined.

(*See id.* at 4-6.)

Mr. Ford filed his motion to remand this case to King County Superior Court on

April 27, 2020.  (*See* Mot. at 14.)  The court now considers Mr. Ford's motion.

### III.    ANALYSIS

In support of his motion to remand, Mr. Ford contends that (1) Boeing

is judicially estopped from removing this case (*see id.* at 6-7); and (2) even if Boeing

is not estopped, this court lacks diversity jurisdiction because N.F. and Newco are both

Washington citizens, and Newco is not fraudulently joined (*see id.* at 7-14).  In response,

Boeing argues that (1) Boeing is not judicially estopped from removing this case (*see*

Resp. at 4-6); and (2) Newco is fraudulently joined because Mr. Ford does not plead any

actionable claims on behalf of N.F. against Newco (*see id.* at 6-10).  The court sets forth

the applicable legal standards before analyzing Mr. Ford's motion.

### A.    Legal Standards

#### 1.    Removal and Remand

Removal of a civil action to federal district court is proper where the federal court

would have original jurisdiction over the state court action.  *See* 28 U.S.C. § 1441(a).  "If

it appears that the federal court lacks jurisdiction, however, 'the case shall be remanded.'" *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 143 (2005) (quoting 28 U.S.C. § 1447(c)). District courts have original jurisdiction over an action with both complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.00. *See* 28 U.S.C. § 1332(a); *see also Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir. 2006). Federal courts strictly construe the removal statute and must reject jurisdiction if there is any doubt as to the right of removal in the first instance. *See Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Thus, the defendant has the burden of establishing that removal is proper. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). Although Boeing has the burden of establishing the grounds for federal jurisdiction, the court is also obliged to satisfy itself that it has subject matter jurisdiction. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) (citing Fed. R. Civ. P. 12(h)(3)).

## 2. Fraudulent Joinder

Fraudulent joinder is an exception to the requirement of complete diversity. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Id.* (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)) (internal alteration in *McCabe*). There is a general presumption against

finding fraudulent joinder, and defendants bear a "heavy burden" to establish it. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548-49 (9th Cir. 2018). Fraudulent joinder must be proved by clear and convincing evidence. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

A defendant may establish fraudulent joinder in one of two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC*, 889 F.3d at 548-49 (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)). A defendant succeeds in the second method if the defendant "shows that an 'individual[] joined in the action cannot be liable on any theory.'" *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). However, "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (quoting *Hunter*, 582 F.3d at 1046)).

The tests for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent. *Id.* at 549. "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id.* Indeed, the fraudulent joinder standard "is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id.* (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). The stringent standard for fraudulent joinder comports with the presumption against removal jurisdiction, under which federal courts "strictly construe the removal statute," and reject

1   federal jurisdiction "if there is any doubt as to the right of removal in the first instance."

2   *Id.* at 550 (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).

3       3.  <u>Judicial Estoppel</u>

4       Judicial estoppel is an "equitable doctrine invoked by a court at its discretion."

5   *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d

6   1033, 1037 (9th Cir. 1990)) (internal quotation marks omitted).  Courts invoke judicial

7   estoppel "to prevent a party from gaining an advantage by taking inconsistent positions"

8   and to "protect against a litigant playing fast and loose with the courts."  *Hamilton v.*

9   *State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell*, 893

10  F.2d at 1037) (internal quotations omitted).  The Ninth Circuit "restrict[s] the application

11  of judicial estoppel to cases where the court relie[s] on, or 'accept[s],' the party's

12  previous inconsistent position."  *See Hamilton*, 270 F.3d at 783; *see also Interstate Fire*

13  *& Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998), *as*

14  *amended* (May 13, 1998) ("A majority of courts apply judicial estoppel only if the court

15  has relied on the party's previously inconsistent statement, and we have recently adopted

16  that rule.").

17      The court considers three non-exclusive factors in determining whether to apply

18  the doctrine:  (1) whether the party's later position is "clearly inconsistent" with its earlier

19  position; (2) whether the party succeeded in persuading a court to accept the earlier

20  position and the court's acceptance of the later position would lead to the perception that

21  the party misled either court; and (3) whether "the party seeking to assert an inconsistent

22  //

1   position would derive an unfair advantage or impose an unfair detriment on the opposing

2   party if not estopped."  *See New Hampshire*, 532 U.S. at 750-51 (citations omitted).

**B.    Mr. Ford's Motion to Remand**

4          The court first addresses Mr. Ford's argument that Boeing is estopped from

5   removing this case before turning to Boeing's argument that jurisdiction is proper

6   because Newco is fraudulently joined.

7          1.   Judicial Estoppel – Removal

8          Mr. Ford argues that Boeing is judicially estopped from removing this case in the

9   first instance—regardless of the court's subject matter jurisdiction—on account of certain

10  positions Boeing took in the Illinois Case.  (*See* Mot. at 6-7.)  Specifically, Mr. Ford

11  contends that Boeing secured a FNC-based dismissal in the Illinois circuit courts by

12  specifically relying on the comparison between the Illinois circuit courts and the

13  Washington superior courts.  (*See id.* at 6 ("In moving for a *forum non conveniens*

14  dismissal in Illinois, Boeing quite clearly intended the state court there to believe that the

15  proposed alternative forum was Washington superior court.").)  Mr. Ford argues that

16  Boeing invited the Cook County Circuit Court to compare court congestion between

17  Illinois and Washington state courts, and that the Cook County Circuit Court's dismissal

18  of the Illinois Case was based in part on that comparison.  (*See id.* at 6-7.)  Mr. Ford

19  further contends that the Cook County Circuit Court would not have ordered FNC-based

20  dismissal had it compared congestion in Illinois state courts to the United States District

21  Court for the Western District of Washington, in which "[f]ive of the district's seven

22  authorized judgeships are vacant, and every vacancy is a judicial emergency."  (*Id.* at 6.)

1    Mr. Ford contends that Boeing made "affirmative use of the processes of a state court" to

2    obtain a tactical advantage and should not now be allowed to "change its position, once it

3    is safely out of the original forum." (*Id.* at 7.)

4         Boeing relies primarily on *Kidwell v. Maybach International Group*, No.

5    2:19-cv-149, 2020 WL 897609 (E.D. Ky. Feb. 24, 2020), to counter Mr. Ford's judicial

6    estoppel argument. (*See* Resp. at 4-6.) In *Kidwell*, the plaintiff moved to remand a

7    removed case to state court on the ground that the defendants "made explicit

8    representations to the Illinois court that they planned to litigate the suit in the state courts

9    of Kentucky," "base[d] . . . mostly on [the defendants] noting that Boone County Courts

10   heard fewer cases and had a faster resolution time." *Kidwell*, 2020 WL 897609 at *1.

11   The Eastern District of Kentucky held that although the defendants had referenced the

12   Boone County, Kentucky docket, "they never clearly and unequivocally stated that they

13   intended to waive their right to remove or litigate the case to a resolution in Kentucky

14   state courts." *Id.* Boeing contends that *Kidwell* directly applies to this case because like

15   the defendants in *Kidwell*, Boeing "made no representations at all about its legal strategy

16   in the event [Mr. Ford] refiled in Washington." (Resp. at 5.) Boeing further counters Mr.

17   Ford's argument that Boeing made affirmative use of the processes of a state court by

18   arguing that (1) contrary to submitting to the Cook County Circuit Court's jurisdiction,

19   Boeing's "use" of the Illinois state court system was not a submission to that court's

20   jurisdiction, but rather an attempt to obtain dismissal of the case from that jurisdiction;

21   and (2) Boeing did not make affirmative use of the King County Superior Court because

22   it removed this case within 30 days of service, before answering or otherwise responding

1    to the complaint.  (*See id*. at 5.)  Finally, Boeing contends that the Cook County Circuit

2    Court found the issue of court congestion to be "neutral," indicating that it was not a

3    major factor in the Cook County Circuit Court's FNC-based dismissal.  (*See id.*)

4         In reply, Mr. Ford faults Boeing's reliance on *Kidwell*, contending that *Kidwell*

5    addressed the issue of waiver, not judicial estoppel.  (*See* Reply (Dkt. # 30) at 2-3.)  Mr.

6    Ford further contends that Boeing did make affirmative use of the Illinois state court

7    system because "Boeing was content to litigate this case in Illinois for 21 months, only

8    pushing for a hearing on its ultimately successful motion to dismiss on *forum non*

9    *conveniens* grounds" after rulings regarding the other plaintiffs in the Illinois case "did

10   not go its way."  (*Id.* at 3.)  Finally, Mr. Ford contends that the Cook County Circuit

11   Court relied heavily on Boeing's argument that the case should be transferred not just to

12   Washington but to a specific forum—Washington superior courts—in granting FNC-

13   based dismissal.  (*See id.* at 3-6 (noting that the Cook County Circuit Court's order

14   mentions "Washington Superior Court" 11 times).)  In sum, Mr. Ford argues that having

15   relied on comparing the Illinois state courts to the Washington state courts, and the Cook

16   County Circuit Court having applied the FNC analysis based on that direct comparison,

17   Boeing should be judicially estopped from now removing from the Washington state

18   courts to federal court.  (*See id.* at 4-6.)

19        Having set forth the parties' positions, the court analyzes whether Boeing is

20   estopped from removing this case to federal court by applying the three judicial estoppel

21   factors:  (1) whether the party's later position is "clearly inconsistent" with its earlier

22   position; (2) whether the party succeeded in persuading a court to accept the earlier

position and the court's acceptance of the later position would lead to the perception that the party misled either court; and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *See New Hampshire*, 532 U.S. at 750-51 (citations omitted).

> a. *Whether Boeing's Later Position is "Clearly Inconsistent" with its Earlier Position*

The first factor weighs against invoking judicial estoppel.  Courts generally require that for a position to be "clearly inconsistent," the party must have actually taken a particular position in the first place.  Nowhere in the Illinois state court documents filed with this court does Boeing represent that it will not remove a later-filed case to federal court.  Although Boeing cited statistics regarding docket congestion in Washington Superior Courts, it never agreed that it would not remove if Mr. Ford re-filed in Washington state court.  Therefore, Boeing's current position—that it may remove this case—is not "clearly inconsistent" with a previous position it took.

Mr. Ford is correct that a party may invoke judicial estoppel to secure a remand in a removed case in some instances.  However, the authority Mr. Ford relies on for that position here undermines his argument.  For example, in *Iglesias v. Welch Foods Inc.*, No. 17-CV-00219-TEH, 2017 WL 1227393, at *2 (N.D. Cal. Apr. 4, 2017), the defendants previously took the position that the plaintiffs lacked Article III standing.  Defendants then removed the case to federal court, despite acknowledging that the plaintiffs must have Article III standing to remove a case to federal court.  *Id.*  In contrast

//

ORDER - 11

1    to the defendants in *Iglesias*, here Boeing took no position on removal or this court's

2    jurisdiction in the Illinois Case.

3            b.   *Whether the Court's Acceptance of Boeing's Later Position Would Lead to*
             *the Perception that the Party Misled Either Court*

4

5            The second factor also weighs against invoking judicial estoppel.  Boeing

6    argued the issue of court congestion to the Cook County Circuit Court, which at least

7    implied that FNC-based dismissal was warranted because Washington state courts are

8    less congested than Illinois state courts.  (*See* Ill. FNC Order at 26-28.)  Boeing's position

9    at least implies that Boeing intended to defend the case in the Washington state court

10   system, not in the heavily congested Western District of Washington.  However, Mr.

11   Ford overstates the importance of this argument to the Cook County Circuit Court's

12   decision to dismiss the Illinois Case.   The Cook County Circuit Court ultimately found

13   that the congestion factor was "neutral."  (*See id.* at 28.)  The Cook County Circuit Court

14   based its ruling on the other public and private interest factors.  (*See id.* at 10-28.)

15   Several of those factors depend solely on geographic location, making it immaterial

16   whether the case is ultimately litigated in Washington state court or Washington federal

17   court.  (*See, e.g.*, *id.* at 12 (analyzing the "convenience of the parties" factor and

18   concluding that "each plaintiff lives either in King or Snohomish Counties, Washington;

19   none has ever lived in Illinois"; and holding that it is "obvious" that it is inconvenient for

20   the case to proceed in Chicago); *id.* at 15-18 (holding that the "relative ease of access to

21   evidence factor . . . strongly favors Washington").)  Therefore, the Cook County Circuit

22   Court's FNC-based dismissal order strongly suggests that it was not misled by Boeing's

ORDER - 12

1  congestion-based arguments; or if it was, it had no effect on the court's decision to

2  dismiss the Illinois Case.

3          c.   *Whether Boeing Would Derive an Unfair Advantage or Impose an Unfair
             Detriment if Not Estopped*

4

5          The third judicial estoppel factor asks whether the party asserting an inconsistent

   position would receive an "unfair advantage or impose an unfair detriment on the

6  opposing party if not estopped." *See New Hampshire*, 532 U.S. at 751 (citations

7  omitted).  Mr. Ford does not explain how Boeing would derive an unfair advantage by

8  removing this case.  (*See generally* Mot.)  At most, Mr. Ford states in conclusory fashion

9  that Boeing "obtained a significant tactical advantage" by litigating this case in

10 Washington instead of in Illinois.  (*See id.* at 7.)  However, Mr. Ford does not contend

11 that N.F. will lose any substantive rights to pursue her claims if this case proceeds in

12 federal rather than state court, fails to explain the "significant tactical advantage" Boeing

13 will gain by litigating in federal court, and fails to explain how any such advantage would

14 be "unfair."  (*See generally* Mot.)  Accordingly, the court concludes that this factor

15 weighs against invoking judicial estoppel.

16          d.   *Judicial Estoppel Conclusion*

17          In sum, the three judicial estoppel factors weigh against invoking judicial estoppel.

18 Therefore, the court declines to exercise its discretion to invoke judicial estoppel to

19 preclude Boeing from removing this case.  *See New Hampshire*, 532 U.S. at 750.

20 //

21 //

22

2. <u>Fraudulent Joinder</u>

Although Mr. Ford is the moving party on his motion to remand, Boeing is the party seeking to invoke the court's subject matter jurisdiction. (*See* Not. of Removal at 2, 4-6.) Therefore, Boeing bears the burden to establish that Newco is fraudulently joined. *See Kroske*, 432 F.3d at 980; *Grancare, LLC*, 889 F.3d at 548-49. Boeing contends that Newco is fraudulently joined because Mr. Ford does not plead an actionable claim against Newco. (Resp. at 6.) Specifically, Boeing contends that Mr. Ford's complaint "does not even attempt to specifically identify which workplace chemicals" he "might have encountered," does not plead that Newco supplied any particular chemical among the broad categories identified, and does not plead that Newco supplied the chemical *and* that it was the cause of N.F.'s injuries (Resp. at 7-9).

A defendant may establish fraudulent joinder in one of two ways: "(1) [A]ctual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC*, 889 F.3d at 548-49 (quoting *Hunter*, 582 F.3d at 1044). Boeing seeks to establish fraudulent joinder in the second way, meaning Boeing must show that Newco "cannot be liable on any theory." *Id.* (quoting *Ritchey*, 139 F.3d at 1318). However, "if there is a *possibility* that a state court would find that the complaint states a cause of action" against Newco, this court "must find that the joinder was proper and remand the case to the state court." *Id.* (quoting *Hunter*, 582 F.3d at 1046). It is not sufficient for Boeing to establish that Mr. Ford fails to state a claim on behalf of N.F. against Newco as understood under Rule

//

12(b)(6), but rather that Mr. Ford's claim against Newco "is wholly insubstantial and frivolous." *Id.* (citing *Bell*, 327 U.S. at 682-83).

Boeing identifies two purported deficiencies with Mr. Ford's claims against Newco: (1) that Mr. Ford fails to "specifically identify which workplace chemicals" he "might have encountered" (*see* Resp. at 8); and (2) Mr. Ford's complaint does not plead that Newco supplied any particular chemical among the broad categories identified, let alone that Newco supplied the chemical *and* it was the cause of N.F.'s injuries (*see id.*).

The court evaluates Boeing's challenges to the sufficiency of Mr. Ford's claims against Newco under Washington State—not federal—pleading standards. *See Grancare, LLC*, 889 F.3d at 548-49 ("[I]f there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.") (quoting *Hunter*, 582 F.3d at 1046). Washington's pleading standards are more relaxed than those set forth in the Federal Rules of Civil Procedure. *See Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 281 (Wash. 2006) ("Washington is a notice pleading state and merely requires a simple, concise statement of the claim and the relief sought.") (citing Wash. Super. Ct. Civ. R. 8).

The court concludes that it is possible that a Washington state court would find that Mr. Ford states a viable claim against Newco on behalf of N.F. *See Grancare, LLC*, 889 F.3d at 548-49. The court finds unpersuasive Boeing's assertion that Mr. Ford's complaint "does not even attempt to specifically identify which workplace chemicals" Mr. Ford "might have encountered" (Resp. at 8) and "does not allege that [Newco]

1    supplied the 'relevant product'" that caused her injuries (*id.* at 7 (quoting RCW

2    7.72.010(3))).  Mr. Ford's complaint specifically alleges that he was exposed—and N.F.

3    was exposed *in utero*—to six categories of chemicals and lists the names of numerous

4    chemicals within those six categories:

5        a. Paints, primers, corrosion inhibitors and the constituents contained
            therein, including: ethylene glycol ether, ethylene glycol ether acetate,
6            chromate a/k/a hexavalent chromium, propylene glycol ether,10-11
            Green Primer, LPS3 Corrosion Inhibitor, AV8 Corrosion Inhibitor;
7        b. Paint strippers and the constituents contained therein, including:
            methylene chloride and phenol;
8        c. Sealants and the constituents therein, including: lead-based sealants,
            Sealant 5-95, Sealant 5-45, and Sealant 5-26;
9        d. Lubricants and the constituents contained therein, including: Freon, LPS,
            Boelube, and cetyl alcohol;
10       e. Solvents and the constituents contained therein, including:
            trichloroethylene (TCE), ethylene glycol ethers, methylene chloride, 1-1-
11           1 trichloroethane, Freon, methyl ethyl ketone (MEK), methyl propyl
            ketone (MPK), phenol, naphtha, benzene, toluene, acetone, xylene, and
12           mineral spirits; and
         f. Other products and the constituents contained therein, including:
13           Isopropyl alcohol (IPA), Dienol, Corban 35, 1000 Body Joint.

14   (*See* KCSC FAC ¶¶ 15(a)-(f).)  The complaint further alleges that Newco "supplied,

15   transported, formulated, re-formulated, mixed, sold and/or distributed some of the

16   aforementioned chemical and metal products and substances to [Boeing] and its

17   employees" and that Boeing "provided all of the aforementioned chemical products and

18   substances to Dana Ford for use at the Boeing Facility."  (*Id.* ¶¶ 17-18.)

19       These allegations are more than sufficient to meet Washington State's more

20   relaxed notice pleading standard.  Mr. Ford's complaint places Newco on notice of both

21   the factual allegations against it—that it supplied chemicals to Boeing that injured N.F. *in*

22   *utero*.  (*Id.* ¶¶ 17-18.)  Further, it places Newco on notice of the legal theories against it—

1   negligence and breach of warranty.  (*Id.* ¶¶ 97-106.)  Further, if there was any doubt

2   whether Mr. Ford's complaint meets Washington Superior Court Civil Rule 8(a)'s

3   pleading standard, that doubt would be resolved in favor of remand.  *See Hawaii ex rel.*

4   *Louie*, 761 F.3d at 1034; *Gaus*, 980 F.2d at 566.  Accordingly, Boeing does not meet its

5   "heavy burden" to establish fraudulent joinder by clear and convincing evidence.  *See*

6   *Grancare, LLC*, 889 F.3d at 548-49.

7          For the reasons stated above, the court concludes that there is not complete

8   diversity because both N.F. and Newco are Washington citizens, and Newco is not

9   fraudulently joined.  Therefore, this court lacks diversity jurisdiction under 28 U.S.C.

10  § 1332(a).  Accordingly, the court GRANTS Mr. Ford's motion to remand this case to

11  King County Superior Court.

12                        **IV.    CONCLUSION**

13         For the reasons set forth above, the court GRANTS Mr. Ford's motion to remand

14  this case to King County Superior Court (Dkt. # 25).  The court ORDERS that:

15         1.      Except for any potential motions for attorneys' fees and costs pursuant to

16  28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior

17  Court for King County, Washington;

18         2.      The Clerk shall send copies of this order to all counsel of record for all

19  parties;

20         3.      Pursuant to 28 U.S.C. § 1447(c), the Clerk shall mail a certified copy of this

21  order to the Clerk for the Superior Court for King County, Washington;

22  //

ORDER - 17

4.     Except for any briefs regarding attorneys' fees and costs, the parties shall file nothing further in this matter, and instead are instructed to seek any further relief to which they are entitled from the courts of the State of Washington, as may be appropriate in due course; and

5.     The Clerk shall CLOSE this case.

Dated this 12th day of June, 2020.

JAMES L. ROBART
United States District Judge

ORDER - 18